John Milton MARCEE, Conservator of the Person and Estate of Cleoma L. Marcee

v.

The UNITED STATES.

No. 438–71.

United States Court of Claims.

Feb. 18, 1972.

John Milton Marcee, pro se.

Gerald L. Schrader, Washington, D. C., with whom was Asst. Atty. Gen., L. Patrick Gray, III, for defendant.

Before COWEN, Chief Judge, LARAMORE and DURFEE, Senior Judges, and DAVIS, COLLINS, SKELTON and NICHOLS, Judges.

## ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

PER CURIAM:

This case is before the court on plaintiff's petition and defendant's motion for summary judgment. Plaintiff as of the petition date alleged that he would shortly become conservator of Cleoma L. Marcee, a mentally deficient and incompetent person. For purposes of this opinion, we assume he did qualify as conservator and will submit proof thereof in due course if it becomes necessary to proceed further in this court. He alleges that Cleoma L. Marcee (hereinafter referred to as Cleoma) contracted tuberculosis of the skin while working for a United States Government agency, that she was coerced to work and denied sick leave, causing her mental damage, that she left Government service on April 4, 1959, being then mentally incompetent, that being incompetent she filed for disability retirement only on October 2, 1962, that the Civil

Service Commission could have waived the late filing because of her mental condition but failed to do so, forcing her to make a living under adverse conditions that severely aggravated her mental condition, and thus causing her further damage. Plaintiff prays judgment against the United States in the sum of $300,000, with interest thereon, most of which is apparently allocable to matters other than nonpayment of the disability retirement.

■■■ The claim appears to sound partly in tort and so far as it does so the motion is obviously well taken, for we have no jurisdiction of tort actions. However, the petition also alleges failure to pay the disability retirement and summary judgment cannot be entered for defendant on that aspect of the case, because the documents the defendant has furnished, with commendable candor, show that there may be triable issues of fact and that the claim cannot be held to be without substance at this stage of the case.

By statute, 5 U.S.C. § 8337, an employee can file for a disability annuity only within one year of separation, but the Civil Service Commission (CSC) can waive late filing in case the employee was incompetent on separation or within one year thereafter. By 5 U.S. C. § 8347, the CSC can prescribe such forms of application as it deems necessary, can adjudicate claims, and its determinations of disability are final and conclusive and not subject to review.

With regard to the disability retirement, defendant relies on the statute of limitations, 28 U.S.C. § 2501, and on the equitable doctrine of laches. It is not necessary to recount in detail the entire history of this claim. Suffice it that Cleoma supported her original, October 2, 1962, application for disability retirement with the certificate of a physician, Doctor Virginia Lee, who stated she had searched her records since 1955, that "at the time I treated Mrs. Marcee and at the present time" she was suffering from Lupus Erythematosus, implicating the central nervous system. An organic brain syndrome resulted from multiple small infarcts in the central nervous system. "Mrs. Marcee's mind has been affected, so that she is not capable of realizing the importance of following in detail the instruction for applying for her pension."

The CSC of course needed to be informed that Cleoma was incompetent on her separation in 1959 and continuously thereafter, and Dr. Lee had failed to state this explicitly. It wrote her for clarification which it never received. Its records indicate that Dr. Lee died on December 2, 1962. Subsequently, there is a history of repeated denials of the claim by the CSC with repeated efforts by Cleoma and her mother and, briefly by counsel, to reopen the case and obtain the disability retirement. Up to the institution of this action, no one submitted proof that Cleoma had been incompetent or otherwise disabled at the time of her separation in 1959 and continuously until her first application on October 2, 1962. The CSC had ample reason nevertheless to suspect and did suspect that Cleoma was and had been mentally incompetent. In fact it informed her that she would have to submit proof that she was able to handle funds before it would allow her to draw out her contribution to the Government retirement fund. Suspecting this much, the CSC could or should have also suspected that Cleoma's failure to perfect her application was due to the fact that she was incompetent. The question then arises, what were the duties and responsibilities of the CSC in these premises?

It might be supposed that the Congress expected the CSC not to sit passively back and leave the incompetent former employee to prove her incompetence. It could have taken the initiative in looking into the matter so that the obvious desire of the Congress should be respected, that former employees disabled in the course of honorable service should not be reduced to penury. Here, it is not necessary to require that

much. Cleoma now has a conservator and defense counsel says in his brief that even now he could prosecute a claim in her behalf with the CSC.

The CSC knows that statutes of limitations run on its determinations. We do not think it can validly start limitations running by the issuance of rulings to persons it knows, or has reason to suspect, are incompetent. *Cf.* Capoeman v. United States, 440 F.2d 1002, 1005, 194 Ct.Cl. 664, 673 (1971), and cases cited therein. The situation is, of course, not the same as fraud but we believe it has the same consequences as fraud with respect to limitations. Fraudulent concealment of significant facts from a claimant tolls the running of our statute of limitations. Mulholland v. United States, 165 Ct.Cl. 231 (1964). Defendant has not such clean hands that it can invoke the equitable doctrine of laches. But for this factor, limitations certainly would have run, as purportedly final rulings were issued over six years prior to the bringing of this action. Therefore, it will be incumbent on the conservator to show not only that Cleoma was incompetent on the date she left Government service and continuously until she filed for disability retirement on October 2, 1962, but also (unless he can obtain administrative relief) at the various times when she received rulings from the CSC denying her claim. With the attending physician, Dr. Lee, now over 9 years dead, the difficulties of proof obviously will be formidable. However, for the reasons stated we are in no position to dismiss the claim for disability retirement at this time.

Accordingly, we allow the defendant's motion so far as it relates to claims sounding in tort. We deny the motion so far as it relates to a claim for disability retirement. We suspend further action here to permit plaintiff conservator to apply to the CSC for administrative relief. The CSC will, of course, have the right to make a final decision on the merits according to the statute, but it may not legally deny the claim on account of failure to prosecute it at any time up to the date of this decision, unless it resolves the issue of incompetency against Cleoma in a proceeding or investigation where she is represented by a competent person.