August WARREN, Executor of the Estate of Oatie Smith, deceased,

v.

The UNITED STATES.

No. 106–82C.

United States Claims Court.

Feb. 17, 1984.

---

**18.** 28 U.S.C. § 2412(d) (Supp. V 1981).

Konrad Kuczak, Dayton, Ohio, for plaintiff.

Allen C. Peters, Washington, D.C., with whom was Acting Asst. Atty. Gen., Richard K. Willard, Washington, D.C., for defendant; Earl Sanders, Office of Personnel Management, Washington, D.C., of counsel.

## OPINION

MARGOLIS, Judge.

This case is before the Court on defendant's motion for summary judgment with

oral argument. Plaintiff, August Warren, as executor of the estate of Mrs. Oatie Smith, is seeking survivor annuity benefits allegedly due Mrs. Smith and retirement annuity benefits allegedly due her deceased husband, Richard D. Smith. Plaintiff claims that due to Mr. Smith's mental incompetence at the time of his discharge from the former United States Post Office Department, he did not apply for retirement benefits or submit a written designation that his surviving spouse receive. an annuity. Because the Government was allegedly aware of Mr. Smith's mental incompetence, plaintiff contends that the defendant United States should be estopped from requiring a formal application for benefits, that it was not required, or that the requirement should be waived. Plaintiff further alleges that the refusal of the Merit Systems Protection Board to award plaintiff the relief requested was unreasonable, arbitrary, and capricious. The defendant asserts that the plaintiff's claims are barred by the statute of limitations, by laches, and that the decision of the Merit Systems Protection Board was supported by substantial evidence and should be affirmed. This Court finds that the plaintiff's claims are barred by the statute of limitations and by laches. Furthermore the Board's decision is supported by substantial evidence and is neither unreasonable, arbitrary nor capricious. Therefore, this Court holds for the defendant.*

## Facts

Plaintiff, August Warren, is the executor of the estate of his deceased mother, Oatie Smith. Personnel records indicate that Richard D. Smith, Mrs. Smith's husband, was employed by the former United States Post Office Department from May 27, 1943 until he was discharged on October 31, 1951 for failure to perform his duties and unsat-

isfactory service. Although Mr. Smith was eligible for a retirement annuity when his employment was terminated, there is no record that he ever applied for or received a retirement annuity prior to his death on April 14, 1960. In addition, there is no record that Mr. Smith submitted a written designation that his surviving spouse receive an annuity. The first record of any inquiry relating to Mrs. Smith's entitlement to a survivor annuity was a letter dated February 23, 1978 from plaintiff, on behalf of Mrs. Smith, to Congressman Clarence J. Brown inquiring about possible benefits. The letter was forwarded to the Civil Service Commission's Bureau of Retirement, Insurance, and Occupational Health (BRIOH), where it was treated as an application for benefits. By letter dated June 27, 1978, BRIOH advised Congressman Brown that no application for a retirement annuity had been submitted on behalf of Mr. Smith prior to his death, and therefore, no Civil Service annuity was payable. Instead, BRIOH found that Mrs. Smith was entitled to the lump sum of Mr. Smith's retirement contributions. This sum, totaling $149.14, was subsequently paid to Mrs. Smith.

In a letter to her Congressman dated July 7, 1978, Mrs. Smith, through the plaintiff, first asserted that Mr. Smith had been mentally incompetent at the time of his discharge, and therefore unable to apply for a retirement annuity. On July 7, 1978, Mrs. Smith also first formally applied for survivor's benefits. BRIOH responded to Mrs. Smith's second inquiry to her Congressman by letter dated January 11, 1979, stating there was a requirement that an eligible former employee apply for annuity payments. BRIOH further advised that even if Mr. Smith was mentally incompetent when he was discharged, his wife or legal guardian could have applied on his behalf, but that an application for retirement sub-

---

* Plaintiff asserts two claims: (1) the annuity which allegedly should have been paid Mr. Smith, and/or (2) the survivor's annuity which allegedly should have been paid Mrs. Smith. Plaintiff, however, has completely failed to address how he, as the executor of the estate of Mrs. Smith, is entitled to obtain Mr. Smith's alleged retirement benefits. Plaintiff has demonstrated no basis upon which he would be entitled to recover retirement benefits allegedly due Mr. Smith. For the purpose of this motion, the Court will assume that plaintiff would be able to establish such a basis.

mitted by a second party could not be accepted after Mr. Smith's death.

By a letter dated September 11, 1979, Mrs. Smith protested BRIOH's decision and indicated that she would appeal the decision if more benefits were not granted. The Office of Personnel Management's Compensation Group (OPM Compensation Group) advised Mrs. Smith in a letter dated April 14, 1980, that no survivor annuity could be paid because no application had ever been received from Mr. Smith. Mrs. Smith died on February 6, 1980. Plaintiff, as representative of Mrs. Smith's estate, appealed the OPM Compensation Group decision by letters dated May 2 and May 7, 1980. On June 17, 1980 the OPM Compensation Group issued its reconsideration decision, affirming its earlier decision and informing plaintiff of the right to appeal to the Merit Systems Protection Board (MSPB). Plaintiff appealed to the MSPB on November 1, 1980. In a decision dated April 17, 1981, the MSPB affirmed OPM's decision denying plaintiff's claim. The MSPB found that the applicable retirement laws and regulations in effect from the time of Mr. Smith's termination until his death specifically required that a claimant must file an application for annuity benefits prior to any action being taken to award such benefits. The Board further found that without a written designation that a surviving spouse receive an annuity at the time of retirement, no survivor annuity could be awarded. Plaintiff brought the instant action in this Court on March 1, 1982.

### Statute of Limitations

██ Plaintiff's claims are barred by the statute of limitations. This Court does not have jurisdiction to hear any claim which was not filed within six years after such claim first accrued. 28 U.S.C. § 2501 (1976) *as amended* by the Federal Courts Improvement Act, Pub.L. 97–164, § 139(a), 96 Stat. 42; *Kirby v. United States,* 201 Ct.Cl. 527, 539 (1973), *cert. denied,* 417 U.S. 919, 94 S.Ct. 2626, 41 L.Ed.2d 224 (1974). This rigid time bar can only be waived if the claimant was under a legal disability or

beyond the seas at the time the claim accrued, and then, the suit must be filed within three years after the disability ceases. 28 U.S.C. § 2501; *Dunn v. United States,* 228 Ct.Cl. 870, 873 (1981). Generally, a claim against the Government first accrues when all events have occurred which fix the government's liability and entitle the claimant to institute an action. *Kirby v. United States,* 201 Ct.Cl. at 532; *Sauer v. United States,* 173 Ct.Cl. 642, 647, 354 F.2d 302, 304 (1965). In addition, the Court of Claims has held that a claim for retirement annuity credits accrues upon retirement from government service. *Baker v. United States,* 222 Ct.Cl. 263, 275–76, 614 F.2d 263, 271 (1980). In the present case, all events which fixed the liability of the government occurred when Mr. Smith was discharged and was eligible to receive a retirement annuity and elect to have his spouse receive a survivor annuity upon his death. Accordingly, plaintiff's cause of action first accrued on October 31, 1951, the date of Mr. Smith's discharge from the Post Office Department. Plaintiff did not file his complaint in this Court until March 1, 1982, nearly thirty-two years after his cause of action first accrued. Thus, plaintiff is clearly barred by the statute of limitations from bringing his action before this Court unless he can show that the statute was either waived or tolled.

Even if this Court were to assume that Mr. Smith's alleged mental incompetence constitutes a legal disability under 28 U.S.C. § 2501, and therefore, suspended the running of the statute of limitations from the time of his discharge, plaintiff's suit is still untimely. The legal disability provisions of statutes of limitations are designed to provide relief from some personal handicap or impediment affecting the individual litigant and preventing him from bringing a timely suit. *Goewey v. United States,* 222 Ct.Cl. 104, 113, 612 F.2d 539, 544 (1979). Accordingly, any tolling of the statute of limitations due to disability was removed when he died on April 14, 1960. The statute then commenced to run. *Fiandaca v. Niehaus,* 570 S.W.2d 714, 717 (Mo.Ct.App.1978); *Triplett v. Williams,* 269 Cal.App.2d 135, 74

Cal.Rptr. 594 (Cal.Ct.App.1969); *Harrison v. Holsenbeck,* 208 Ga. 410, 67 S.E.2d 311 (Ga.1951).

Plaintiff's reliance on *Marcee v. United States,* 197 Ct.Cl. 363, 455 F.2d 525 (1972), is misplaced. Plaintiff concedes that the defendant had no duty to file an application on Mr. Smith's behalf. Plaintiff contends that because the defendant should have known of Richard Smith's mental incompetency, the defendant should be estopped from requiring a formal application for benefits or that the requirement should be waived. The time within which the legal representative of Richard Smith should have asserted such a claim, however, was six years from the date of Richard Smith's death. Plaintiff's claim was not presented for administrative review until 1978, approximately eighteen years after the latest possible date upon which any possible cause of action accrued. Plaintiff waited approximately twenty-two years after Mr. Smith's death before bringing his complaint before this Court.

■ Mrs. Smith's claim, too, accrued at the latest when Mr. Smith died. Plaintiff claims that "Oatie Smith within the limits of her education, knowledge, and geographic isolation pursued her claim to the best of her ability." However, Mrs. Smith's alleged ignorance of her rights is not sufficient to toll the statute of limitations absent a showing that defendant has concealed its acts or that the injury was inherently unknowable at the accrual date. *Japanese War Notes Claimants Ass'n v. United States,* 178 Ct.Cl. 630, 634, 373 F.2d 356, 359 (1967), *cert. denied,* 389 U.S. 971, 88 S.Ct. 466, 19 L.Ed.2d 461 *rehearing denied,* 390 U.S. 975, 88 S.Ct. 1020, 19 L.Ed.2d 1192 (1968). Neither unknowability nor concealment by the defendant is present in this case. Additionally, Mrs. Smith's letter to her Congressman in 1978 inquiring about benefits and the MSPB's subsequent consideration of the merits of her claim did not renew the running of the limitations period. Even where the exhaustion of administrative remedies prior to filing suit is mandatory, seeking and obtaining an administra-

tive decision long after the statute of limitations has run does not change the accrual date for purposes of applying the statute of limitations to bar a subsequent action appealing that administrative decision. *Zinger Construction Company, Inc. v. United States,* No. 122–82C (Ct.Cl. August 27, 1982).

■ Finally, plaintiff's contention that the applicable statute of limitations is 5 U.S.C. § 8345(i)(2) (1980) is without merit. Section 8345(i)(2) allows applications for survivor annuities to be filed within thirty years after the death of an employee or an annuitant. Plaintiff asserts that his claim was filed within this thirty year period and that his complaint before this Court was filed within six years after the denial of the application for benefits. However, at the time of his death, Mr. Smith was neither an employee of the Post Office Department nor an annuitant. Civil Service annuity rights are determined by the law in effect at the time of retirement or termination of employment. *Patterson v. United States,* 216 Ct.Cl. 458, 459, 578 F.2d 1389 (1978); *Lawrenson v. United States,* 139 Ct.Cl. 370, 372–373, 153 F.Supp. 790 (1957). Under the controlling statutes in effect at the time of Mr. Smith's discharge (and when he died), an application for an annuity was a statutory requirement. An annuitant was defined as someone who had met all requirements of the chapter for entitlement and who had filed a claim for benefits. 5 U.S.C. § 716, 718a (1946). Plaintiff concedes that Mr. Smith never filed an application making a claim for annuity benefits, and thus, this Court finds that he could not qualify for them. Finally, 5 U.S.C. § 8345(i)(2) does not itself retroactively create a substantive right so that Mrs. Smith can obtain survivor annuity benefits where none otherwise exists.

### Laches

■ Plaintiff's claims also are barred by laches. The doctrine of laches bars relief to one who unreasonably and inexcusably delays the assertion of his claim. *Brundage v. United States,* 205 Ct.Cl. 502,

505, 504 F.2d 1382, 1384 (1974), *rehearing denied,* 206 Ct.Cl. 823 (1975), *cert. denied,* 421 U.S. 998, 95 S.Ct. 2395, 44 L.Ed.2d 665 (1975). To establish the defense of laches, the defendant must show undue delay by the plaintiff resulting in prejudice to the Government. *Brundage v. United States,* 205 Ct.Cl. at 509, 504 F.2d at 1386.

Plaintiff waited almost eighteen years following the death of Mr. Smith on April 14, 1960 before seeking administrative review of his claim. Plaintiff's complaint was filed nearly twenty-two years after the latest possible date upon which any cause of action could have accrued. Plaintiffs charged with far less delay have been barred from recovery by laches where sufficient prejudice was present. *Brundage v. United States,* 205 Ct.Cl. 502, 504 F.2d 1382. Plaintiff here fails to reveal any extenuating circumstances justifying the lengthy delay in asserting his claim.

■ Plaintiff's delay in bringing his claim before this Court is alone not sufficient to sustain the defendant's defense of laches. Prejudice to the government must be shown. *Brundage v. United States,* 205 Ct.Cl. at 509, 504 F.2d at 1386. However, the longer the delay, the less need there is to search for specific prejudice and the greater the shift to the plaintiff of demonstrating lack of prejudice. *Id.*

■ Prejudice may be shown by some indication that the government's defense has been hampered by the belated prosecution of the plaintiff's claim. *Brundage v. United States,* 205 Ct.Cl. at 510, 504 F.2d at 1387. The defendant contends that its defense has been hampered because of the need to determine factual circumstances underlying Mr. Smith's discharge over thirty years ago. Indeed, plaintiff's claim is premised upon the allegation that at the time of his discharge the defendant knew, or should have known, that Mr. Smith was mentally incompetent and therefore unable to apply for retirement benefits or elect survivor benefits for his spouse. The government would be forced to identify relevant documents still in existence and secure witnesses who could be expected to have an imperfect memory of events occurring over thirty years ago. *Id.* The combination of this specific prejudice plus the long delay in filing suit is enough to invoke laches here.

*Merit Systems Protection Board Decision*

■ Finally, the decision of the MSPB denying plaintiff retirement and survivor benefits was neither unreasonable nor arbitrary and capricious, and is supported by substantial evidence. Plaintiff does not dispute the fact that Civil Service annuity rights are determined by the law in effect at the time of retirement or termination of employment. *Patterson v. United States,* 216 Ct.Cl. 458, 459, 578 F.2d 1389 (1978); *Lawrenson v. United States,* 139 Ct.Cl. 370, 372–73, 153 F.Supp. 790 (1957). The Civil Service retirement law in effect from the time of Mr. Smith's termination until his death required as a prerequisite to his receiving benefits and becoming an annuitant that an individual file a claim with the Civil Service Commission. 5 U.S.C. § 716, 718a (1946). Plaintiff admits that no formal application for benefits was ever filed by Mr. Smith or by Mrs. Smith on his behalf. Thus, because no application for a retirement annuity was filed by Mr. Smith or on his behalf, he did not meet the definition of an annuitant so that annuity payments could commence. Moreover, the controlling statute, 5 U.S.C. § 724(d) (1946), provides that:

> In case an employee shall die without having attained eligibility for retirement or without having established a valid claim for annuity, the total amount of his deductions with interest thereon shall be paid, upon the establishment of a valid claim therefor [to the designated beneficiary or, if none, to the executor or administrator of the estate.]

Plaintiff concedes that Richard Smith never established a valid claim to a retirement annuity nor designated Oatie Smith for a survivor's annuity. Accordingly, Mrs. Smith, as Richard Smith's representative, was entitled to receive only his deductions plus interest, which she in fact received.

 Plaintiff's argument against the statutory requirement of an application for an annuity is that the defendant was aware of Mr. Smith's disability, and therefore, should be either estopped from requiring a formal application or the requirements should be waived. It is well established that the law presumes sanity and competency rather than insanity and incompetency. *Goewey v. United States,* 222 Ct.Cl. 104, 112, 612 F.2d 539, 544 (1979). The claimant has the burden of proving mental incapacity in order to qualify as suffering from a legal disability. *Goewey v. United States,* 222 Ct.Cl. at 112, 612 F.2d at 544. Thus, plaintiff's claim that Mr. Smith was mentally incompetent when terminated and that the Government should have known of his condition would place a heavy burden on the plaintiff to overcome the presumption of sanity and competency. Government records indicate only that plaintiff was terminated for his failure to perform his duties and his unsatisfactory service. The only evidence of Mr. Smith's alleged mental incompetence that plaintiff presented to the MSPB was two statements written thirty years after the fact that Mr. Smith had become unable to continue working because of his mental condition. In view of the presumption of competency and government records indicating only unsatisfactory service as the reason for discharge, the MSPB was justified in its determination that the Government had no duty to ensure that an application was filed on Mr. Smith's behalf because of his alleged incompetency. In addition, absent mandatory instructions from Congress or the President, there is no legal requirement that the Government affirmatively inform an employee about his rights and eligibility under retirement laws. *Nordstrom v. United States,* 169 Ct.Cl. 632, 638, 342 F.2d 55 (1965); *Aflague v. United States,* 159 Ct.Cl. 80, 86–87, 309 F.2d 753 (1962). Thus, the Government had no legal duty to ensure that Mr. or Mrs. Smith filed an application for benefits or to file an application on their behalf.

Additionally, the MSPB found that under the controlling statutes and regulations in effect at the time Mr. Smith was terminated, Mrs. Smith was not entitled to a survivor annuity because there was no election made for her to receive his annuity. Applicable laws and regulations required that a qualified employee upon retirement designate a surviving spouse to receive an annuity only by a written designation or an affirmative act. No survivor annuity could be awarded if no designation was made at the time of retirement. 5 C.F.R. § 29.12(a), (c) (1949). Later amendments to the survivor annuity election requirement did not require the annuitant to make an affirmative election, but the amendments were expressly made non-retroactive. Pub.L. No. 87–793, 76 Stat. 832, § 1104 (October 11, 1962). Accordingly, the failure of Mr. Smith or someone acting on his behalf to elect a survivor annuity barred Mrs. Smith from receiving a survivor annuity.

Finally, the MSPB correctly found that 5 U.S.C. § 8345(i)(2) (1980), which provides that applications for survivor annuities may be filed within thirty years of the death of an employee or an annuitant, did not retroactively establish a right to benefits which did not otherwise exist. At the time of his death in 1960, Mr. Smith was neither an employee nor an annuitant as defined in 5 U.S.C. § 718a (1946). Thus, Mr. Smith's lack of status as an annuitant at the time of his death barred Mrs. Smith from receiving survivor benefits.

Accordingly, the defendant's motion for summary judgment is granted, and the complaint will be dismissed.